IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RANDY PAUL STEPHEN H.,**[1] ) <br> ) <br> **Plaintiff,** ) <br> ) <br> ) **CIVIL ACTION** <br> **v.** ) <br> ) **No. 24-1181-JWL** <br> **LELAND DUDEK,**[2] ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegation of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On February 18, 2025, Mr. Dudek became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted for Acting Commissioner Michelle King as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

I.    **Background**

Plaintiff protectively filed an application for SSDI benefits on April 15, 2022. (R. 10, 200). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously discounted Plaintiff's allegations of fatigue symptoms because he failed to articulate the inconsistencies upon which he relied to discount Plaintiff's allegations of symptoms and he erroneously evaluated Mr. Richardson's medical opinion.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court finds reversible error in the ALJ's failure to identify inconsistencies in the record evidence upon which he based his decision to discount Plaintiff's allegations of disabling symptoms.  Consequently, the court may not provide an advisory opinion regarding any alleged error in evaluating Mr. Richardson's opinion.

**II.   Discussion**

Plaintiff claims the ALJ erred in evaluating Plaintiff's allegations of disabling symptoms "because he relied on conclusory statements and an even-handed summary of the record that did not identify inconsistencies in the record."  (Pl. Br. 8) (citing Attia D. S. v. O'Malley, Civ. A. No. 23-1262-JWL, 2024 WL 4381228, at *6 (D. Kan. Oct. 2, 2024)).  He argues the evaluation of his alleged symptoms "was limited to conclusory

4

statements and a summary of the record." (Pl. Br. 9). He notes the ALJ found his allegations "about his symptoms were 'not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision,'" but provided no explanation in the decision. Id. 9 (quoting R. 17). He argues the ALJ "merely summarized the facts and left it for the reader to surmise which facts demonstrated inconsistencies and how those inconsistencies supported his finding that Plaintiff's allegations are not entirely consistent." Id. (quoting this court's decision in Stephanie Jean S. v. Kijakazi, Civ. A. No. 20-1349-JWL, 2022 WL 204244, at *4 (D. Kan. Jan. 24, 2022)).

The Commissioner argues,

> the ALJ reasonably found that Plaintiff's subjective claims that his symptoms were more debilitating were not an accurate reflection of his functional abilities, relying on objective medical evidence, clinical findings, and demonstrated abilities that did not suggest Plaintiff had greater restrictions than found by the ALJ.

(Comm'r Br. 6). He argues, "The ALJ thoroughly discussed that evidence, his reasoning is easily discerned, and the record supports his findings," and he provides as an example of that support the prior administrative medical findings of the state agency medical consultants. Id.

### A.      Standard for Evaluating Plaintiff's Allegation of Symptoms

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983). "Credibility determinations[3] are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on August 2, 2023, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

> The regulation explains:
>
> We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4).  SSR 16-3p provides further guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult. … In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related. …

7

> We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record.  <u>We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.</u>  We will evaluate an individual's symptoms considering all the evidence in his or her record.

SSR 16-3p, 2017 WL 5180304, *9 (SSA Oct. 25, 2017) (emphasis added).

### B.    The ALJ's Relevant Findings

The ALJ noted Plaintiff alleged impairments of chronic fatigue syndrome and panic attacks but found that they are merely symptoms of other impairments, and that chronic fatigue syndrome is not a medically determinable impairment in the circumstances of this case.  (R. 13-14).  The ALJ stated that in his RFC assessment he had considered the symptoms of panic attack and fatigue.  <u>Id.</u> 13.

The ALJ did not mention fatigue or panic attack in finding Plaintiff's condition does not meet or medically equal the severity of any physical or mental impairment in the Listing of Impairments, though he did note "The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant."  <u>Id.</u> 14-16.

In discussing his RFC assessment the ALJ stated, "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  <u>Id.</u> 16.  The ALJ noted Plaintiff "alleges that he was unable to work because of breathing issues and fatigue" and summarized Plaintiff's alleged limitations from all his impairments as:  "Inability to sit, stand or walk for long periods;

8

Pain; Panic attacks; Difficulty around people; and Problems with breathing and fatigue."

(R. 17).  The ALJ found Plaintiff's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Id.

The ALJ also summarized the treatment notes and evaluated the prior administrative findings of fact and medical opinions.  Id. 17-23. He found the findings of the psychological consultant at the initial level not persuasive because the finding of mild functional limitations is contrary to the evidence of multiple severe limiting psychiatric impairments and the findings of the psychological consultant at the reconsideration level only partially persuasive because the record supports only simple instructions rather than 3-4 step instructions.  Id. 21.

He determined the findings of the medical consultant at the initial review partially persuasive because the record supports additional limitations to never climb ladders, ropes or scaffolds; and to avoid pulmonary hazards, extreme cold and heat, and hazards to breathing impairments.  Id.  He determined the findings of the medical consultant at the reconsideration level are only partially persuasive because the evidence supports additional limitations to occasional stooping, kneeling, and crouching; and the additional pulmonary limitations listed above.  Id.  He also found no record support for noise limitations.  Id.

The ALJ found the medical opinion of Dr. Thomas, who provided a report of a consultative examination, only partially persuasive and discounted it because the opinion regarding slowed cognitive speed is vague, and greater limitations than assessed in the RFC are not supported by certain record evidence cited in the decision. (R. 22). Finally, the ALJ found the opinion of Plaintiff's psychologist[4] only partially persuasive and discounted it because Mr. Richardson's opinion regarding no limitations in the broad areas of understanding; and concentration, persistence, or pace and of marked limitations in the broad areas of social function and adaptation are not supported by certain record evidence cited in the decision. Id.

The ALJ concluded his consideration of Plaintiff's allegations of symptoms by explaining:

> Considering all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities. The residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to their allegations of disability.

(R. 23).

### C.     Analysis

As the Commissioner argues in his brief, the ALJ discussed the objective medical evidence and the clinical findings, his reasoning is easily discerned, and—no doubt—

---

[4] Mr. Richardson is a licensed master's level psychologist (LMLP) in Kansas.

some record evidence supports his findings.  (Comm'r Br. 6).  The problem is, he did not follow the applicable legal standard as laid out in the applicable regulation and ruling and he did not explain his reasons for finding inconsistency between Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms and the record evidence as he said he would do in the decision.  (R. 17).

As set forth above, the regulation requires the ALJ to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence."  20 C.F.R. § 404.1529(c)(4).  Moreover, the ruling requires that the ALJ "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."  SSR 16-3p, 2017 WL 5180304, *9.  While the language used in the decision indicates the ALJ considered inconsistencies and states his intent to explain them and how they led to his conclusion to discount the allegations, the decision simply does not identify any inconsistency and is silent as to how the inconsistencies led to discounting Plaintiff's allegations of symptoms.

An ALJ is not required to address every alleged symptom and make a finding about its consistency or inconsistency with the record evidence.  For example, symptoms such as pain or fatigue are not susceptible to direct measurement.  But there may be other alleged symptoms which provide more direct consideration and there may be inconsistencies in a claimant's reports to different healthcare providers or in reports to individual providers at different times, or reports to the agency or to other groups or individuals.  Thus, it is incumbent on the ALJ to look at the entire record and to identify

11

consistencies and inconsistencies in all the evidence to discern how to evaluate the claimant's allegations and to explain the rationale for his ultimate evaluation of the claimant's allegations of symptoms. If there are inconsistencies sufficient to justify discounting a claimant's allegations in one respect, they will likely justify discounting the allegations in every respect.

Here, the ALJ simply did not identify or point out any particular inconsistency—or any particular consistency for that matter. As Plaintiff suggests, "the ALJ's decision next 'summarized the medical evidence in a very even-handed way, listing both the medical providers findings and Plaintiff's reports to the providers on an equal footing.'" (Pl. Br. 9) (quoting Stephanie Jean S. 2022 WL 204244, at *4). It is as though the ALJ expected the reader to perceive inconsistencies for himself which would justify the decision to discount Plaintiff's allegations. That is not the responsibility of the reader, either Plaintiff, the general public, or the court. That is the ALJ's duty. Because he failed to do it here, remand is necessary.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

Dated April 11, 2025, at Kansas City, Kansas.

        s/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**